## United States District Court
## District of Massachusetts

|                                  |     |                    |
|----------------------------------|-----|--------------------|
| The D.S. Brown Company,          | )   |                    |
|                                  | )   |                    |
|     Plaintiff, | ) |                    |
|                                  | )   |                    |
|     v.       | )   |                    |
|                                  | )   | Civil Action No.   |
| White-Schiavone, JV, et al.      | )   | 19-30095-NMG       |
|                                  | )   |                    |
|     Defendants. | ) |                  |
|                                  | )   |                    |
|                                  | )   |                    |
|                                  | )   |                    |

### MEMORANDUM & ORDER

**GORTON, J.**

This consolidated action arises from a public works project whereby the materials supplier, The D.S. Brown Company ("D.S. Brown" or "plaintiff"), provided the builder, White-Schiavone, J.V. ("White-Schiavone"), with a certain kind of concrete that purportedly was defective.  Plaintiff brings an assortment of state law claims and a petition for declaratory judgment against White-Schiavone, the general contractor, J.F. White Contracting Co. ("J.F. White") and Schiavone Construction Co., LLC ("Schiavone"), the joint venture partners (collectively "the Schiavone defendants"), and Huntsman International LLC ("Huntsman"), a materials manufacturer, (collectively "the defendants") to determine the contractual responsibilities of each party with respect to the defective concrete.

- 1 -

In response, the Schiavone defendants have filed a joint motion to dismiss for failure to state a claim (Docket No. 22) and defendant Huntsman has filed a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim (Docket No. 36), in which all other defendants have joined (Docket No. 43). In a Memorandum and Order entered on October 29, 2020, this Court denied the motion to dismiss for lack of subject matter jurisdiction while retaining under advisement the other grounds for dismissal. The Court addresses the remaining pending motions here and will, for the following reasons, allow the motion filed by Huntsman but deny the motion filed by the Schiavone defendants.

I. **Background**

The Court set forth the convoluted procedural history and the factual background of this case in greater detail in its recent Memorandum and Order, see Docket No. 88, but focuses, here, on the background relevant to the pending motions.

**A. The Parties and Procedural History**

Plaintiff is an Ohio corporation that designs, manufactures and supplies engineered products for the bridge and highway industries. Defendant White-Schiavone is a Massachusetts joint venture that was awarded a construction contract by the Massachusetts Department of Transportation ("MassDOT") to replace the bridge decking on the I-91 viaduct in Springfield,

Massachusetts ("the Project").  White-Schiavone is comprised of two joint venture partners: 1) J.F. White Contracting Co., a Massachusetts corporation with its principal place of business in Massachusetts and 2) and Schiavone Construction Co., LLC, a limited liability company.  Defendant Huntsman International LLC is a Texas-based limited liability company that designs, manufacturers and sells chemical products.

Plaintiff commenced this action in the Western Division of this Court on July 2, 2019 and subsequently amended its complaint twice.  In the Second Amended Complaint ("SAC"), plaintiff alleges eight counts.  Count I seeks a declaratory judgment to determine the contractual responsibilities of each party in connection with the purportedly defective delcrete. Counts II through VIII are brought against Huntsman, asserting that it supplied plaintiff with defective delcrete and, as a result, breached its implied warranty of merchantability (II); was grossly negligent (III); breached its contract (IV); was negligent (V); must, under common law indemnification principles, indemnify plaintiff (VI); breached its implied warranty of fitness (VII); and violated M.G.L. c. 93A, §§ 2 and 11 (VIII).

Defendants have filed motions to dismiss the SAC in its entirety.  White-Schiavone and its joint venture partners have moved to dismiss the SAC for failure to state a claim, while

Huntsman has moved to dismiss the SAC for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim.  White-Schiavone and its partners have joined Huntsman's motion.  This Court recently denied that motion, in part, with respect to subject matter jurisdiction.

On the same day Huntsman filed its motion to dismiss, it also filed a complaint in Texas state court, seeking a declaratory judgment against D.S. Brown in connection with the defective delcrete. See Huntsman International LLC v. D.S. Brown Co., No 19-11-14861 (Co. Ct., Montgomery County, Tex. Nov. 1, 2019).

Soon thereafter, White-Schiavone filed a complaint against D.S. Brown in the Massachusetts Superior Court, seeking to hold D.S. Brown liable for the harm caused by the defective delcrete. See White-Schiavone, JV v. The D.S. Brown Co., No. 19-3663 (Mass. Super. Ct., Nov. 21, 2019).  D.S. Brown subsequently removed the case to the Western Division of this Court and filed a counterclaim and third-party complaint against White-Schiavone, J.F. White, Schiavone and Huntsman, asserting the same claims as those alleged in the SAC.  A few weeks after removal, plaintiff moved to consolidate the two cases and White-Schiavone simultaneously filed a motion to transfer both cases to the Eastern Division of the District of Massachusetts.  The motion to transfer was allowed on April 17, 2020, bringing both

cases to this Session of this Court.  The motion to consolidate was allowed on October 29, 2020.

**B. The Facts**

As part of the Project, White-Schiavone executed a materials contract ("the Contract") with D.S. Brown in or about June, 2015, under which plaintiff agreed to supply White-Schiavone with a certain kind of concrete called "delcrete," among other materials.  The delcrete was used in the installation of expansion joints under the I-91 viaduct bridge deck.  Plaintiff asserts that it did not itself manufacture the delcrete but instead purchased it from Huntsman International LLC pursuant to independent Purchase Orders.  The Purchase Orders directed Huntsman to ship the delcrete to D.S. Brown in Ohio in May, July, and August, 2017, after which plaintiff forwarded the material to White-Schiavone in Massachusetts.

By mid-2017, White-Schiavone had received shipments of delcrete from plaintiff and began using it to install the expansion joints.  Soon thereafter, however, White-Schiavone reported to MassDOT that the delcrete was causing the expansion joints to fail because it was crumbling, de-bonding and separating from the bridge deck.  It is unclear what caused the failures.  Plaintiff submits that they were caused by either the storage, handling or installation procedures of White-Schiavone or the manufacturing process of Huntsman.

In or about December, 2017, plaintiff began to supply
White-Schiavone with a different batch of delcrete ("delcrete
2") which functioned properly.  MassDOT, in response, directed
White-Schiavone to replace all previously installed expansion
joints with new joints using delcrete 2.  Plaintiff contends
that White-Schiavone subsequently threatened to file suit
against it for supplying defective delcrete, causing plaintiff
to initiate this action for declaratory judgment.

## II.  <u>Huntsman's Motion to Dismiss for Lack of Personal Jurisdiction</u>

### A. Huntsman's Argument

Huntsman alleges that plaintiff has failed to make a prima
facie showing that this Court has authority to exercise
jurisdiction over the Texas-based company because it has
proffered no evidence to establish that Huntsman had contacts
with Massachusetts that relate to this litigation.

Huntsman submits that the SAC does not state a claim for
general jurisdiction because it does not allege that Huntsman
has any presence in Massachusetts, such as offices, facilities,
real or personal property or employees, let alone a presence
that renders the company "at home" in the Commonwealth.  Indeed,
the only office location of Huntsman that is mentioned in the
SAC is its principal place of business, in Houston, Texas.

Huntsman also contends that plaintiff has fallen short of establishing specific jurisdiction because none of the three shipments of delcrete at issue in this case was shipped by Huntsman to Massachusetts.  Instead, as alleged in the SAC and confirmed by the incorporated Purchase Orders, the subject materials were shipped by Huntsman from Texas directly to D.S. Brown in Ohio.  Furthermore, Huntsman asserts that it was not a party to the Contract between White-Schiavone and D.S. Brown. Accordingly, it avers that

> there is no basis for finding that Huntsman purposefully availed itself of the protections of Massachusetts law.

It is irrelevant, Huntsman stresses, that its product ended up in Massachusetts because the final destination of the delcrete was due only to the unilateral action of D.S. Brown.

D.S. Brown responds that the Court should exercise 1) general jurisdiction over Huntsman because the company is registered to do business in Massachusetts and/or 2) specific jurisdiction over Huntsman because, in 2016, it delivered shipments of delcrete directly to White-Schiavone in Massachusetts.  Although plaintiff did not mention those shipments in the SAC, it now avers that the 2016 delcrete also caused injury that was suffered in Massachusetts.  White-Schiavone has responded, however, that it is not seeking to

recover any damages resulting from delcrete received by the joint venture prior to 2017.

With respect to the 2016 shipment of delcrete, Huntsman rejoins that 1) the shipment was not mentioned in the SAC, 2) it has nothing to do with this dispute and 3) the destination of that shipment was determined exclusively by D.S. Brown.

### B. Legal Standard

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that the Court has authority to exercise jurisdiction over defendants. Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Where, as here, the Court will decide a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the Court applies the "prima facie" standard of review and takes the plaintiff's

> properly documented evidentiary proffers as true and
> construe[s] them in the light most favorable to
> [plaintiff's] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). A plaintiff cannot, however, rely on "unsupported allegations" and "must put forward evidence of specific facts to demonstrate jurisdiction exists." Id. (internal citations omitted); see also Philips v. Prairie Eye Center, 530 F.3d 22, 26 (1st Cir. 2008) (explaining that, in order for a plaintiff to make a prima facie showing of jurisdiction, it "ordinarily

cannot rest upon the pleadings but is obliged to adduce evidence of specific facts.").

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009).  As such, to make a prima facie showing of personal jurisdiction in diversity cases, the plaintiff must demonstrate that the exercise of jurisdiction 1) is statutorily permitted and 2) coheres with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Id. Because the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, extends jurisdiction to the limits of the Constitution, the Court proceeds directly to the constitutional analysis. See Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007).

The Due Process Clause demands a showing by plaintiff of either general or specific jurisdiction. Negron-Torres v. Verizon Commc'n Inc., 478 F.3d 19, 24 (1st Cir. 2007).  To establish either, plaintiff must demonstrate that the subject defendant has "minimum contacts" with Massachusetts such that the exercise of personal jurisdiction over it accords with "traditional notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

### 1. General Jurisdiction

General jurisdiction exists when the defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state." United States v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001).  Exercising general jurisdiction over an entity that is neither incorporated nor has its principal place of business in the forum is exceptional and must be reserved for situations in which the entity is "essentially at home in the forum State." See Daimler AG v. Bauman, 571 U.S. 117, 133 n.11, 139 n.19 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v Brown, 564 U.S. 915, 919 (2011)).

Here, plaintiff has not established that this Court has general jurisdiction over Huntsman because it has provided no evidence showing that the Texas-based company has engaged in continuous or systematic activity in Massachusetts.  Missing from plaintiff's proffers is any evidence that Huntsman has an office, property or even employees in the state.  Instead, it submits only that Huntsman is registered to do business here, a fact that, without more, fails to create the exceptional circumstance required to render Huntsman "essentially at home" in Massachusetts and fails to convince this Court that jurisdictional discovery is warranted. Negron-Torres, 478 F.3d at 27 (noting that jurisdictional discovery was unwarranted

because the plaintiff failed to make a colorable case for
personal jurisdiction).

### 2. Specific Jurisdiction

Specific jurisdiction, on the other hand, requires a
"demonstrable nexus" between the claims of the plaintiff and the
contacts of the defendant with the forum state. Swiss Am. Bank,
274 F.3d at 618.  Such nexus can be created only by the
defendant's contacts and not by the unilateral activity of the
plaintiff with the forum state. Harlow v. Children's Hosp., 432
F.3d 50, 58 (1st Cir. 2005).

In analyzing such contacts, this Court must consider three
factors: relatedness, purposeful availment and reasonableness.
See Astro-Med Inc., 591 F.3d at 9.  An affirmative finding as to
all three is required before a court can exercise specific
jurisdiction over a defendant. Phillips Exeter Academy v. Howard
Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

### a. Relatedness

The first factor concerns whether "the claim underlying the
litigation . . . directly arise[s] out of, or relate[s] to, the
defendant's forum-state activities." Astro-Med, Inc., 591 F.3d
at 9 (internal quotation marks omitted).  Although that inquiry
is a "flexible, relaxed standard," id. (internal citations
omitted), it cautions that the exercise of personal jurisdiction

is improper if the "defendant's forum-state contacts seems attenuated and indirect." Harlow, 432 F.3d at 61.

Here, the claims underlying this litigation do not relate to any contacts Huntsman has had with Massachusetts.  As alleged in the SAC and conceded by White-Schiavone, only three shipments of delcrete that were sent by Huntsman are at issue in this action and all of them were sent in 2017 directly to D.S. Brown in Ohio.  Thereafter, D.S. Brown unilaterally forwarded the product to White-Schiavone in Massachusetts.  There is no evidence demonstrating that Huntsman played any role in getting the delcrete from Ohio to Massachusetts or that its contacts with any party to this action extended beyond Ohio.

Although, in its opposition to Huntsman's motion, plaintiff proffers a Purchase Order from 2016, pursuant to which Huntsman shipped delcrete directly to White-Schiavone in Massachusetts, that shipment is not a subject of or even mentioned in the SAC and is, thus, outside of the scope of this litigation. Furthermore, White-Schiavone has submitted that it does not seek recovery of any damages associated with the 2016 delcrete, thereby eliminating any dispute over those shipments. See Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995) ("The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between

the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state.").

### b. Purposeful Availment

In any event, plaintiff has failed to establish the second factor concerning whether defendant's contacts with Massachusetts represent a "purposeful availment by defendants of the privilege of conducting business in that State," making any contacts with it foreseeable and voluntary. Sawtelle, 70 F.3d at 1389, 1393; Astro-Med, Inc., 591 F.3d at 10.   Purposeful availment is required to ensure that specific jurisdiction is premised on more than "random, isolated, or fortuitous" contacts by defendant with the forum state or "the unilateral activity of another party or third party." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal citations and quotation marks omitted).

Accordingly, the place of injury is insufficient alone to establish specific personal jurisdiction. See Walden v. Fiore, 571 U.S. 277, 290 (2014).   Furthermore,

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State . . . [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert [that] into an act purposefully directed toward the forum State.

Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty., 480 U.S 102, 112 (1987).

Although the Court is cognizant that resolving this entire dispute in one forum would be more efficient for all parties, it will not fabricate personal jurisdiction to achieve that goal. It finds instead that, in manufacturing, selling and shipping the subject delcrete, Huntsman did not purposefully avail itself of the privilege of conducting business in Massachusetts.  Nor did it purposefully direct any activities toward this state when it executed the three Purchase Orders with an Ohio corporation and sent three shipments of delcrete to Ohio.  That the delcrete ended up in Massachusetts was the result of unilateral activity of D.S. Brown. See Walden, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

The analysis is unaltered by the fact that, when Huntsman placed the delcrete into the stream of commerce, the Texas company could have expected the material to be delivered to Massachusetts.  Such an expectation is insufficient to be deemed purposefully directing its product toward Massachusetts. See Asahi Metal Indus., 480 U.S. at 112 (explaining that the defendant's awareness that its product may end up in the forum state is not enough to establish purposeful availment).  Nor is it altered by the fact that the injury to White-Schiavone was sustained in Massachusetts because the place of the injury alone is insufficient to establish specific jurisdiction. See Walden v. Fiore, 571 U.S. 277, 290 (2014) ("The proper question is not

where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

### c. Reasonableness

The final factor to consider is whether imposing jurisdiction on the defendant would be reasonable, considering 1) the burden on the defendants to appear, 2) the forum state's interest in adjudicating the dispute, 3) plaintiff's interest in convenient and effective relief, 4) the judicial system's interest in obtaining efficient resolution of controversies and 5) the common interest of all sovereigns in promoting substantive social policies. See Burger King Corp., 471 U.S. at 477. These considerations are not a checklist but should instead be used "to put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction . . ." See Pritzker, 42 F.3d at 64. Taken together, they "may tip the constitutional balance" in close calls. Id.

Because plaintiff has failed to establish relatedness and purposeful availment, the Court need not determine whether exercising personal jurisdiction over Huntsman would be reasonable. See Phillips Exeter Academy, 196 F.3d at 288. Having determined that the Court lacks both general and specific

jurisdiction over Huntsman, it will allow Huntsman's motion to dismiss all claims asserted against the Texas-based company.

## III. Defendants' Motions to Dismiss for Failure to State a Claim

### A. Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

Here, to the extent the parties rely on documents that extend beyond the facts alleged in the complaint or susceptible to judicial notice and documents incorporated by reference, those documents are excluded from the Court's consideration of the Schiavone defendants' motion to dismiss for failure to state a claim.

### B. Declaratory Judgment

Under 28 U.S.C. § 2201, jurisdiction in a declaratory judgment action is proper if there exists an "actual controversy" between the parties. See Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 272-73 (1941) ("[T]he facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). The Court has complete discretion in determining "whether and when" to entertain a claim for a declaratory judgment. See U.S. Liability Ins. Co. v. Selman, 70 F.3d 684, 693 (1st Cir. 1995).

### C. Application

D.S. Brown seeks a judgment against the Schiavone defendants declaring 1) the parties' rights and obligations under the Contract and 2) which party is responsible for the damages, if any, resulting from the defective delcrete. It seeks specifically a judgment declaring that D.S. Brown is

neither in breach of the Contract nor responsible for the
defective delcrete.

White-Schiavone contends that plaintiff has failed to state
a claim for declaratory relief because it has asserted no
factual allegations detailing how White-Schiavone improperly
handled, stored or installed the delcrete.  To state a claim for
relief, however, D.S. Brown need not plead with certainty how
White-Schiavone caused the alleged damages but merely needs to
plead facts sufficient to state a plausible claim for
declaratory relief.  D.S. Brown has done that by alleging that
1) the delcrete caused the expansion joints to fail, 2) White-
Schiavone was responsible for handling, storing and installing
the delcrete and 3) its procedures for doing so contributed to
the failure of some of the expansion joints.  Those allegations,
when accepted as true, allow for the plausible inference that
the failure of the expansion joints arose during the handling,
storage or installation of the delcrete, thereby entitling D.S.
Brown to a declaratory judgment.

In any event, plaintiff's allegations, in most material
respects, are reciprocal to the allegations contained in White-
Schiavone's complaint which was initially filed in Massachusetts
state court but has since been consolidated with this action.
See Bunge Oils, Inc. v. M & F Marketing Development, LLC, No.
03-11559-GAO, 2005 WL 629489, at *3 (D. Mass. Mar. 15, 2005)

(denying a motion to dismiss a counterclaim for declaratory judgment because it "in most respects is the mirror image of count two of [plaintiff's] amended complaint.").  Not only does that complaint demonstrate that an actual controversy exists here but it also renders dismissal of D.S. Brown's petition for a declaratory judgment moot because the crossclaims of the parties are before the Court in any event.  Accordingly, the Court will deny the Schiavone defendants' motion to dismiss for failure to state a claim for declaratory relief.

## ORDER

For the foregoing reasons, the motion to dismiss filed by defendant Huntsman International LLC (part, but not all, of Docket No. 36) is **ALLOWED** but the motion to dismiss filed by White-Schiavone, JV, J.F. White Contracting Co. and Schiavone Construction Co., LLC (Docket No. 22) is **DENIED**.

All claims asserted against Huntsman are hereby dismissed. **So ordered.**

\s\ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 5, 2020