```
                 United States District Court
                   District of Massachusetts
```

|  |  |
|---|---|
| **The D.S. Brown Company,**    )<br>                                )<br>        Plaintiff,              )<br>                                )<br>        v.                      )<br>                                )<br>**White-Schiavone, JV, et al.**  )<br>                                )<br>        Defendants.             )<br>                                )<br>                                )<br>                                ) | Civil Action No.<br>19-30095-NMG |

                     **MEMORANDUM & ORDER**

**GORTON, J.**

This consolidated action arises from a public works project whereby a materials supplier, The D.S. Brown Company ("D.S. Brown" or "plaintiff"), delivered to the general contractor (or its agent), White-Schiavone, J.V. ("White-Schiavone"), a certain kind of concrete that was purportedly defective. In both its second amended complaint and third-party complaint, D.S. Brown brings an assortment of state law claims and a petition for declaratory judgment against White-Schiavone, the general contractor, J.F. White Contracting Co. ("J.F. White") and Schiavone Construction Co., LLC ("Schiavone"), the joint venture partners (collectively "the Schiavone defendants") and against Huntsman International LLC ("Huntsman"), a manufacturer of a

                            - 1 -

component of the concrete, (collectively "the defendants") to determine the contractual responsibilities of each party.

In a Memorandum and Order entered on November 5, 2020 ("the November M&O"), this Court, inter alia, dismissed from the SAC all claims against Huntsman for lack of personal jurisdiction. Now pending before the Court are D.S. Brown's motion for reconsideration and Huntsman's motion to dismiss the third-party complaint for lack of personal jurisdiction. For the reasons that follow, D.S. Brown's motion will be denied and Huntsman's motion will be allowed.

### III. Background

This Court has set forth the convoluted factual and procedural history of this case in greater detail in the Court's prior Memoranda and Orders, see Docket Nos. 88 & 90, focusing here on the details relevant to the pending motions.

#### A. The Parties and Factual History

D.S. Brown is an Ohio corporation that designs, manufactures and supplies engineered products for the bridge and highway industries. Defendant White-Schiavone is a Massachusetts joint venture that was awarded a construction contract by the Massachusetts Department of Transportation ("MassDOT") and became the general contractor to replace the bridge decking on the I-91 viaduct in Springfield, Massachusetts ("the Project"). White-Schiavone is comprised of two joint

venture partners: 1) J.F. White Contracting Co., a Massachusetts corporation with its principal place of business in Massachusetts and 2) and Schiavone Construction Co., LLC, a limited liability company.  Defendant Huntsman International LLC is a Texas-based limited liability company that designs, manufacturers and sells chemical products.

As part of the Project, White-Schiavone entered into a materials contract ("the Contract") with D.S. Brown in or about June, 2015, under which plaintiff agreed to supply White-Schiavone with a certain kind of concrete called "delcrete", among other materials.  The delcrete was used in the installation of expansion joints in the I-91 viaduct bridge deck.

Plaintiff asserts that it did not itself manufacture the delcrete but instead purchased it from Huntsman pursuant to independent Purchase Orders.  One Purchase Order in October, 2016, directed Huntsman to deliver a shipment of delcrete directly to White-Schiavone in Massachusetts.  All other Purchase Orders, which were executed in May, July, and August, 2017 ("the 2017 shipments"), directed Huntsman to ship the delcrete to D.S. Brown in Ohio, after which plaintiff forwarded the materials to White-Schiavone in Massachusetts.

By mid-2017, White-Schiavone had discarded the 2016 shipment of delcrete (for which White-Schiavone is not seeking

reimbursement), and had received new shipments from D.S. Brown that it was using to install the expansion joints. Soon thereafter, however, White-Schiavone reported to MassDOT that the delcrete was causing the expansion joints to fail because it was crumbling, de-bonding and separating from the bridge deck. It is unclear what caused the failures but D.S. Brown submits that they were caused by either White-Schiavone's storage, handling or installation procedures or Huntsman's manufacturing process.

In or about December, 2017, D.S. Brown began to supply White-Schiavone with a different batch of delcrete ("delcrete 2") which functioned properly. MassDOT, in response, directed White-Schiavone to replace all previously installed expansion joints with new joints using delcrete 2. D.S. Brown asserts that White-Schiavone subsequently threatened to file suit against it for supplying defective delcrete, causing D.S. Brown to initiate an action for declaratory judgment.

**B. The Procedural History**

In July, 2019, plaintiff commenced this action in the Western Division of this District Court, and subsequently amended its complaint twice. In the second amended complaint ("SAC") plaintiff incorporates eight counts. Count I seeks a declaratory judgment to determine the contractual responsibilities of each party in connection with the

purportedly defective delcrete. The remaining seven counts were brought against Huntsman, asserting that it supplied plaintiff with defective delcrete and, as a result, breached its implied warranty of merchantability and its contract, and was negligent, among other things.

Thereafter, all of the defendants filed motions to dismiss the SAC in its entirety. White-Schiavone and its joint venture partners moved to dismiss the SAC for failure to state a claim, while Huntsman moved to dismiss it for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim. On the same day Huntsman filed its motion to dismiss, it also filed a complaint in Texas state court, seeking a declaratory judgment against D.S. Brown in connection with the defective delcrete. See Huntsman International LLC v. D.S. Brown Co., No 19-11-14861 (Co. Ct., Montgomery County, Tex. Nov. 1, 2019).

In November, 2019, White-Schiavone filed a complaint against D.S. Brown in the Massachusetts Superior Court, seeking to hold D.S. Brown liable for damages resulting from the defective 2017 delcrete. See White-Schiavone, JV v. The D.S. Brown Co., No. 19-3663 (Mass. Super. Ct., Nov. 21, 2019). D.S. Brown subsequently removed that case to the Western Division of this Court and filed a counterclaim and third-party complaint against the Schiavone defendants and Huntsman, asserting claims

parallel to those in the SAC. A few weeks after the removal, D.S. Brown moved to consolidate the two cases and White-Schiavone simultaneously filed a motion to transfer both of them to the Eastern Division of the District of Massachusetts. The motion to transfer was allowed in April, 2020, bringing both cases to this Session of this Court. The motion to consolidate was subsequently allowed in a Memorandum and Order entered by this Court on October 29, 2020 ("the October M&O").

Also in the October M&O, this Court denied the motion of defendant Huntsman to dismiss for lack of subject matter jurisdiction, finding D.S. Brown diverse from all of the defendants in this case. A week later, this Court entered another Memorandum and Order ("the November M&O") in which it allowed Huntsman's motion to dismiss for lack of personal jurisdiction but denied the Schiavone defendants' motion to dismiss for failure to state a claim. In dismissing Huntsman from the SAC, this Court reasoned that none of the underlying claims related to any contacts Huntsman had with Massachusetts, nor did the factual allegations indicate that Huntsman purposefully availed itself of conducting business in the Commonwealth.

## VI. Discussion

### A. This Court Lacks Personal Jurisdiction Over Huntsman

The two motions pending before this Court compel it to reconsider its prior determination that personal jurisdiction over defendant Huntsman is lacking in this case. In particular, Huntsman has moved to dismiss D.S. Brown's third-party complaint for lack of personal jurisdiction and D.S. Brown has moved for reconsideration of the Court's November M&O to the extent it dismissed Huntsman for lack of personal jurisdiction.

Huntsman submits that D.S. Brown still fails to demonstrate that this Court has jurisdiction over the Texas-based company. Huntsman contends that there is no evidence in the record that it has had any relevant contacts with Massachusetts and that its motion to dismiss is "essentially a formality" because the same jurisdictional deficiencies are present in D.S. Brown's third-party complaint as in the SAC.

D.S. Brown responds that its allegation in the third-party complaint that Huntsman sent the 2016 shipment of delcrete directly to Massachusetts establishes specific jurisdiction over that defendant. It adds that reconsideration of this Court's prior decision is warranted because "new evidence" demonstrates that Huntsman knew its product would be utilized in Massachusetts and that the invoices of the limited liability company directed payment to an address located in Boston.

Huntsman rejoins that D.S. Brown's reliance on the 2016 shipment of delcrete is misplaced because, as this Court already found, that shipment was unrelated to the pending dispute. White-Schiavone does not seek recovery of any cost associated with delcrete sent prior to May, 2017, thereby rendering the 2016 shipment irrelevant.

**B. Legal Standard**

The Court has "substantial discretion and broad authority to grant or deny" a motion for reconsideration. Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81 (1st Cir. 2008). A motion for reconsideration will be allowed if the movant shows a manifest error of law, newly discovered evidence or that the Court has made an error "not of reasoning but apprehension." Id.

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that the Court has authority to exercise jurisdiction over defendants. Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Where, as here, when the Court decides a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, it applies the "prima facie" standard of review and takes the plaintiff's

> properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiff's] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). A plaintiff cannot, however, rely on "unsupported allegations" and "must put forward evidence of specific facts to demonstrate jurisdiction exists." Id. (internal citations omitted); see also Philips v. Prairie Eye Center, 530 F.3d 22, 26 (1st Cir. 2008) ("In order to make a prima facie showing of jurisdiction, the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." (internal quotation marks omitted)).

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009). As such, to make a prima facie showing of personal jurisdiction in diversity cases, the plaintiff must demonstrate that the exercise of jurisdiction 1) is permitted by the Massachusetts long-arm statute, M.G.L. c. 223A, § 3 and 2) coheres with the Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment") by showing that each defendant has "minimum contacts" with Massachusetts. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

The requirements of M.G.L. c. 223A, § 3 are substantially similar to (although potentially more restrictive than) those imposed by the Fourteenth Amendment. See Copia Commc'ns, LLC v.

AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016) (noting that "[r]ecently, however, we have suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution"). Because no party has invoked the long-arm statute, the Court will proceed directly to the constitutional analysis. See id.

The Due Process Clause demands a showing by plaintiff of either general or specific jurisdiction. Negron-Torres v. Verizon Commc'n Inc., 478 F.3d 19, 24 (1st Cir. 2007). To establish either, plaintiff must demonstrate that each defendant has "minimum contacts" with Massachusetts such that the exercise of personal jurisdiction over that defendant accords with "traditional notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

**1. General Jurisdiction**

General jurisdiction exists when the defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state." United States v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001). Exercising general jurisdiction over an entity that is neither incorporated nor has its principal place of business in the forum is exceptional and must be reserved for situations in which the entity is "essentially at

home in the forum State." See Daimler AG v. Bauman, 571 U.S. 117, 133 n.11, 139 n.19 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v Brown, 564 U.S. 915, 919 (2011)).

Despite the "new evidence" proffered by D.S. Brown, its argument that this Court has general jurisdiction over Huntsman remains unavailing.  That evidence is insufficient to show that Huntsman, a Texas-based company, has engaged in such continuous or systematic activity in Massachusetts that it can be deemed "essentially at home" in the Commonwealth.  D.S. Brown's suggestion that Huntsman is registered to do business in Massachusetts and maintains a P.O. Box in Boston falls short of the "exceptional" circumstances warranting the exercise of this Court's general jurisdiction. See Daimler AG, 571 U.S. at 139 n.19 ("It is one thing to hold a corporation answerable for operations in the forum State, quite another to expose it to suit on claims having no connection whatever to the forum State" (internal citation omitted)).

### 2. Specific Jurisdiction

Specific jurisdiction, on the other hand, requires a "demonstrable nexus" between the claims of the plaintiff and the contacts of the defendant with the forum state. Swiss Am. Bank, 274 F.3d at 618.  Such nexus can be created only by the defendant's contacts and not by the unilateral activity of the

- 11 -

plaintiff with the forum state. Harlow v. Children's Hosp., 432 F.3d 50, 58 (1st Cir. 2005).

In analyzing those contacts, this Court must consider three factors: relatedness, purposeful availment and reasonableness. See Astro-Med Inc., 591 F.3d at 9. An affirmative finding as to all three is required before a court can exercise specific jurisdiction over a defendant. Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

### a. Relatedness

The first factor questions whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Astro-Med, Inc., 591 F.3d at 9 (internal quotation marks omitted). Although that inquiry is a "flexible, relaxed standard," id. (internal citations omitted), it cautions that the exercise of personal jurisdiction will be improper if the "defendant's forum-state contacts seems attenuated and indirect." Harlow, 432 F.3d at 61.

Having reviewed the submissions of the parties, this Court finds once again that the claims underlying this litigation do not relate to any contacts Huntsman has had with Massachusetts. Indeed, the only proffered contact between Huntsman, the delcrete and Massachusetts is the 2016 shipment which, as this Court explained previously in the November M&O, may pertain to the general relationship between the parties but is irrelevant

to this litigation because White-Schiavone is not seeking recovery of damages associated with it. See Sawtelle, 70 F.3d at 1389 ("The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state.").

With respect to the disputed 2017 shipments, moreover, Huntsman presumably manufactured the delcrete in Texas or in another state outside of the Commonwealth and, then, shipped it from that state directly to D.S. Brown in Ohio pursuant to independent Purchase Orders.  Thereafter, D.S. Brown forwarded the product to Massachusetts, apparently without any involvement of Huntsman.  Accordingly, Huntsman's manufacture and sale of the purportedly defective delcrete implicates Texas and Ohio but not Massachusetts.

### b. Purposeful Availment

The Court further concludes that D.S. Brown has, again, failed to establish the second jurisdictional factor of "purposeful availment by defendants of the privilege of conducting business in [Massachusetts]," making any contacts with it foreseeable and voluntary. Sawtelle v. Farrell, 70 F.3d 1381, 1389, 1393 (1st Cir. 1995); Astro-Med, Inc., 591 F.3d at 10.  Purposeful avialment is required to ensure that specific

jurisdiction is premised on more than "random, isolated, or fortuitous" contacts by defendant with the forum state or "the unilateral activity of another party or third party." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal citations and quotation marks omitted).

None of the new evidence proffered by D.S. Brown convinces this Court that, by manufacturing delcrete outside the Commonwealth, executing purchase orders from an Ohio corporation and shipping the product to Ohio, Huntsman purposefully availed itself of the privileges of conducting business in Massachusetts. That Huntsman knew the delcrete was to be shipped to Massachusetts and that it directed payment of its invoices to a Boston, Massachusetts P.O. Box does not change the fact that its product ended up in the Commonwealth only as the result of the unilateral activity of D.S. Brown. See Walden, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."); see also Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg, 295 F.3d 59, 65 (1st Cir. 2002) ("[T]he due process clause arguably requires more than a literal but for link between the Massachusetts contact [of defendant] and the asserted cause of action." (internal quotation marks omitted)).

Despite the concerted effort of D.S. Brown to convince this Court that it has personal jurisdiction over Huntsman,

plaintiff's argument falls short.  This Court will, therefore, dismiss Huntsman from this consolidated action.

### A. Jurisdictional Discovery

In its broad discretion, the Court is permitted to allow jurisdictional discovery where a plaintiff has made a "colorable claim" of jurisdiction and has been "diligent in preserving [its] rights to be entitled to jurisdictional discovery". See Swiss II, 274 F.3d at 625-27.  Such diligence requires a plaintiff to "present facts to the court which show why jurisdiction would be found if discovery were permitted". Id. at 626.  Here, plaintiff has made no such presentation during this extensive litigation.  For that reason, jurisdictional discovery is unwarranted.

### ORDER

For the foregoing reasons, the motion to dismiss filed by defendant Huntsman International LLC (Docket No. 92) is **ALLOWED** and The D.S. Brown Company's motion for reconsideration (Docket NO. 96) is **DENIED**.  The claims against Huntsman International LLC are hereby **DISMISSED**.

**So ordered.**

/s/ Nathaniel M. Gorton  
Nathaniel M. Gorton  
United States District Judge

Dated April 28, 2021